[Civ. No. 30441. Second Dist., Div. Two. June 6, 1967.]

EDITH D. CAVITT, Plaintiff and Respondent, v. CITY OF LOS ANGELES et al., Defendants and Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, Weldon L. Weber and John J. Tully, Jr., Assistant City Attorneys for Defendants and Appellants.

Kenneth Sperry and Melvin King for Plaintiff and Respondent.

ROTH, P. J.—The City of Los Angeles appeals from a judgment declaring that Edith D. Cavitt is entitled to receive, pursuant to section 183½ of the Los Angeles City Charter, from the city's Fire and Police Pension Fund, a fixed monthly pension of $310.40 for the remainder of her natural life or until remarriage, and awarding her pension benefits of $2,926.89 including interest, accrued to date of judgment.

The facts are undisputed. On August 25, 1920, Edith married Clyde D. Cavitt. On March 1, 1930, Clyde became a member of the Los Angeles Police Department, a position he held continuously until February 15, 1949, when he retired on a nonservice-connected disability and began receiving a pension under section 182¼ of the city charter.

On July 29, 1949, Edith obtained a final decree of divorce from Clyde. Both Edith and Clyde remained unmarried until September 11, 1952, when they remarried each other. They remained married and continued to live as husband and wife from that date until Clyde's death on January 25, 1965.

On February 2, 1965, Edith filed a written application with the city's Board of Pension Commissioners for a widow's death benefit pension pursuant to section 183½ of the city charter. Her application was denied by the board on February

17, 1965. Edith filed the action at bench to compel payment under the above charter provision on July 2, 1965.

The pertinent provisions of section 183½ of the Los Angeles City Charter are as follows:

"Sec. 183½. Whenever any member of the Fire or Police Department (other than a member retired on account of years of service or a member eligible to retirement on account of years of service, *but including a member retired on account of disability pursuant to the provisions of Section 182¼ of this charter*) who shall have served in such department for five years or more in the aggregate from the date of his last appointment to such department, shall die from causes other than those arising out of or from the performance of his duties, then an annual pension shall be paid in equal monthly installments *to his widow.* . . . Said pension shall be paid to the widow during her lifetime or until she remarries. . . . Provided, further, however, that no widow shall be entitled to a pension pursuant to the provisions of this section *unless she shall have been married to such deceased member for at least one year prior to the date of his death.*

"And provided further, that no widow of a member who shall die while on disability retirement pursuant to the provisions of Section 182¼ of this charter shall be entitled to a pension pursuant to the provisions of this section *unless she shall have been married to such deceased member for at least one year prior to the date of his retirement.*" (Italics added.)

The city concedes that to qualify for pension benefits, Edith, if she is Clyde's widow, must satisfy only the proviso that "she shall have been married to such deceased member for at least one year prior to the date of his retirement."[1]

The city does not challenge the amount of monthly benefits awarded Edith, the lump sum award of accrued benefits, or the allowance of interest on the portion accrued before judgment. Its sole contention is that the trial court erred in qualifying Edith for pension benefits under section 183½.

The agreed facts clearly show that Edith was married to Clyde for more than one year prior to February 15, 1949, the date Clyde retired. The language of section 183½, however, provides benefits not to any woman to whom the deceased was married for at least one year prior to his retirement, but to

---

[1]The proviso dealing with marriage for at least one year prior to death applies to a widow of an employee qualified for pension benefits who has died while still employed.

the employee's *widow*. Since a widow is the surviving spouse of a deceased man, the section imposes the additional requirement by its very terms that Edith have been Clyde's surviving spouse at the date of his death. (See *Benson* v. *City of Los Angeles*, 60 Cal.2d 355, 360 [33 Cal.Rptr. 257, 384 P.2d 649].)

Although conceding that the single proviso of section 183½ applicable to Edith is the one requiring that the widow shall have been married to the deceased for at least one year prior to the date of his retirement, the city argues that the courts in *Lovell* v. *Parrish*, 34 Cal.App.2d 323 [93 P.2d 166], and *Benson* v. *City of Los Angeles, supra,* have, in construing similar statutory language, added the condition that the marriage must be "continuous" to and including date of death.

■ Construing the provisions of section 183½, we are guided by the firmly established rule that such pension statutes are to be liberally interpreted in favor of the applicant so as to effectuate, rather than defeat, their avowed purpose of providing benefits for the employee and his family. (*Wendland* v. *City of Alameda*, 46 Cal.2d 786, 791 [298 P.2d 863]; *Terry* v. *City of Berkeley*, 41 Cal.2d 698, 701-702 [263 P.2d 833]; *Gibson* v. *City of San Diego*, 25 Cal.2d 930,935 [156 P.2d 737]; *McKeag* v. *Board of Pension Comrs.*, 21 Cal.2d 386, 390 [132 P.2d 198].) ■ Rights to pension benefits are valuable property rights (*Kern* v. *City of Long Beach,* 29 Cal.2d 848, 851 [179 P.2d 799]; *Malone* v. *City of Los Angeles*, 126 Cal.App.2d 447, 452 [272 P.2d 796]) which, when ". . . earned during the course of a marriage are the community property of the employee and his wife. (*French* v. *French*, 17 Cal.2d 775, 778 [112 P.2d 235]; *Cheney* v. *City & County of San Francisco*, 7 Cal.2d 565, 569 [61 P.2d 754]; Civ. Code, § 164.)'' (*Benson* v. *City of Los Angeles, supra,* at p. 359.) Such rights may not be taken away "by strained construction" of the applicable statutory language. (*Larson* v. *Board of Police etc. Comrs.*, 71 Cal.App.2d 60, 63 [162 P.2d 33], and cases cited therein.)

■ There is nothing in the language of section 183½ which imposes the further requirement that Edith have been *continuously* married to Clyde from one year prior to his retirement, to the time she became his widow. We see no reason to infer such additional qualifying language contrary to the rule of construction of pension statutes.

In *Benson, supra,* the former wife (Teresa) of a deceased fireman, and the fireman's widow (Olive) were each seeking

pension benefits based on their relationships to the deceased. The court concluded that despite Teresa's assertion that her rights in the pension were community property and were recognized as such in the divorce decree she obtained from the deceased,[2] the contract between the community and the city could validly provide for payment of benefits only to the widow. After the fireman's death, therefore, the only right which Teresa possessed in the pension "was to enforce the city's covenant to make payments to the 'widow.'" (*Benson* v. *City of Los Angeles, supra,* at p. 360.) Olive, and not Teresa, was the widow and so qualified for the benefits.

In the course of its discussion, the court stated, in construing the meaning of the phrase "at least one year prior to the date of his death": "But even this contemplates more than the bare fact that a marriage had taken place at such time, as the one eligible to make claim is further described as the 'widow,' and the obvious inference is that such marriage must have *continued* until the member's death." (*Benson* v. *City of Los Angeles, supra,* p. 360.) (Italics added.)

The words "continued married," as distinguished from the concept contained in the words "continuously married," may be construed to require only that the parties be married at the date of death rather than that the marriage in existence at the date of retirement must have been continuously in existence from its beginning at all times up to and including date of death. There is in this case a single widow and a single marriage. The court in *Benson* was concerned only with the establishment of widow status for one of two contesting claimants to pension benefits. The section there involved by its wording specified "widow" and the real question was which of the two was the widow. On the facts before us there can be no question that Edith was Clyde's widow.

In *Lovell, supra,* (hearing denied), clearly in point and principally relied upon by the city, Rolfe Lovell, a City of San Diego fireman, married Lillian in 1903. In 1919, Rolfe retired on a fire department pension. On February 18, 1929, Lillian obtained a final divorce decree from Rolfe and on the same day, married McAndrews. She lived with McAndrews until the latter's death on April 21, 1937. On July 19, 1937, Lillian remarried Rolfe and lived with him as his wife for approxi-

---

[2]There is nothing in the instant record which indicates in what way the 1949 divorce disposed of any of Edith's and Clyde's community property.

mately eight months, until Rolfe's death on March 12, 1938.

The applicable city charter section provided in pertinent part: " ' . . . the widow shall not be entitled to any pension unless *she was married* to said pensioner *three years* previous to the time of such retirement.' " The appellate court reversed the trial court's award of a pension to Lillian on the ground that the 1929 divorce "completely severed and terminated" both the 1903 marriage and any "vestige" of a claim in Lillian to a pension based on this marriage. The court stated that to receive pension benefits, Lillian would have had to requalify under the 1937 marriage "by a continuance of such remarriage status for a period of three years prior to his retirement, followed by his death while such remarriage status still persisted." The court held on the facts before it that this was impossible because Rolfe "had already retired before her remarriage to him occurred. . . ." (*Lovell* v. *Parrish, supra,* at p. 326.) The same observation does, of course, apply to the facts at bench.

There is no question that the 1949 divorce terminated conclusively the 1920 marriage between Edith and Clyde and that subsequent remarriage did not legally affect the finality of the prior termination. (*Barber* v. *Barber,* 16 Cal. 378.) We recognize that a theory of "reinstatement" of community property rights acquired under a first marriage by a second marriage following divorce would be totally inconsistent with the concept of divorce and its legal effect on the marriage relationship. However, section 183½ does not by its terms specify that the marriage for at least one year prior to retirement shall have been the same marriage under which the surviving spouse acquired widow status.

 In the instant case, unlike *Lovell,* neither Edith nor Clyde remarried anyone following their divorce except that three years and two months after the divorce they remarried each other. They were married in 1920 and "continued" married for a period of 42 of the 45 years after their first marriage in 1920. No second marriage by either to any third person intervened. If Edith and Clyde had separated legally or otherwise without divorce, there probably would have been no objection to her application for a pension. The pension rights were clearly community property in which Edith participated when acquired by Clyde. (*Benson* v. *City of Los Angeles, supra,* at p. 359.) We may assume that the 1949 divorce might have disposed of Edith's interest in the pen-

sion, but the record does not so indicate. In any event, on remarriage Edith presumably brought back into the "community" if not legally, at least equitably, her share of the divided property which both parties enjoyed until Clyde's death 13 years thereafter.

We feel that when the rule of liberal construction of pension statutes is applied to the facts of the instant case, the ambiguous requirement of "continuous" marriage read into the statute by *Lovell, supra,* results in an anomalous and unjust result not intended by section 183½.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.

A petition for a rehearing was denied June 29, 1967, and appellants' petition for a hearing by the Supreme Court was denied July 26, 1967.