[Civ. No. 27069. First Dist., Div. One. Sept. 28, 1970.]

CHARLES A. NOROIAN, Plaintiff and Respondent, v.
DEPARTMENT OF ADMINISTRATION, PUBLIC EMPLOYEES'
RETIREMENT SYSTEM, Defendant and Appellant.

652

## COUNSEL

Thomas C. Lynch, Attorney General, and B. Franklin Walker, Deputy Attorney General, for Defendant and Appellant.

Cominos, Shostak & Epstein and Theodore H. Cominos for Plaintiff and Respondent.

## OPINION

MOLINARI, P. J.—Respondent agency appeals from a judgment by which the court below issued a peremptory writ of mandate directing respondent to pay petitioner the retirement benefits provided for in Government Code section 21292.8.[1] That section, as a part of the general state disability retirement scheme, provides, in relevant part, that upon retirement for industrial disability of an employee of the Department of Corrections having custodial duties, he shall receive a specified disability retirement allowance. Respondent's sole contention on appeal is that petitioner's duties were not custodial within the contemplation of section 21292.8. In essence respondent contends that the custodial duties referred to in the statute have reference to custodial duties *primary* in nature and that, therefore, since petitioner's duties were not primarily custodial, the trial court erred in holding that petitioner did have "custodial duties" within the meaning of the statute.

The facts are not in dispute and are as follows: Petitioner was employed at the Soledad Correctional Facility as a woods product foreman. In November of 1966, while on the job, petitioner suffered a heart attack. Petitioner was thereafter unable to work and accordingly retired from state employment. Petitioner was given medical expenses and recovery for temporary disability pursuant to workman's compensation coverage.

[1]Unless otherwise indicated, all statutory references are to the Government Code.

Petitioner's duties as a woods product foreman included the instruction and supervision of some 18 to 20 inmates daily from 7:45 a.m. until approximately 4:30 p.m. Petitioner was responsible for keeping a watch on such men. He was to watch for their absconding with tools or constructing dangerous implements. Petitioner had sole custodial charge of such men during the entire time they were under his supervision. There were no guards, officers or other custodial officers in the immediate area. Petitioner estimated that he spent as much as 75 percent of his working time supervising and watching inmates.

Petitioner, as part of his duties, was required to receive periodic training in "shake downs" and ways to quell altercations. He also received instruction on the use of rifles and tear gas. On occasion petitioner broke up fights between inmates using pipes and wooden clubs. Also, petitioner was required to take any inmate guilty of violating any prison regulation into custody and escort the latter to an officer for the issuance of a citation.

James Cummins, a vocational officer at the correctional training facility at Soledad, testified that those inmates over whom petitioner supervised were generally hostile and antisocial and therefore cases of maximum security. Cummins stated that such men needed constant supervision.

Since the facts are not in dispute the question before us is one of law. (*Jones-Hamilton Co.* v. *Franchise Tax Bd.*, 268 Cal.App.2d 343, 347 [73 Cal.Rptr. 896]; *Rocklite Products* v. *Municipal Court*, 217 Cal.App.2d 638, 641 [32 Cal.Rptr. 183]; *State Bd. of Funeral Directors* v. *Mortuary in Westminster Memorial Park*, 271 Cal.App.2d 638, 642 [76 Cal.Rptr. 832].) In essence the issue presented is one of interpreting the subject statute in the light of the undisputed facts. ▇ In making this interpretation we observe, in preface, that pension or retirement provisions should be liberally construed in favor of the applicant. (*Ralston* v. *State Employees' Retirement System*, 273 Cal.App.2d 228, 233 [78 Cal.Rptr. 31]; *Gibson* v. *City of San Diego*, 25 Cal.2d 930, 935 [156 P.2d 737]; *Cavitt* v. *City of Los Angeles*, 251 Cal.App.2d 623, 626 [59 Cal.Rptr. 690].)

▇ In construing a statute our concern is to ascertain and to give effect to the legislative intent. (*LaBorde* v. *McKesson & Robbins, Inc.*, 264 Cal. App.2d 363, 370 [70 Cal.Rptr. 726]; *Select Base Materials, Inc.* v. *Board of Equalization*, 51 Cal.2d 640, 645 [335 P.2d 672]; *People* ex rel. *Dept. of Pub. Wks.* v. *County of Santa Clara*, 275 Cal.App.2d 372, 375-376 [79 Cal.Rptr. 787]; *Merrill* v. *Department of Motor Vehicles*, 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33].) In ascertaining the intent articu-

lated in a statute, the court should first turn to the words of the statute to determine the will of the Legislature (*People* v. *Knowles,* 35 Cal.2d 175, 182 [217 P.2d 1]; *Rich* v. *State Board of Optometry,* 235 Cal.App.2d 591, 604 [45 Cal.Rptr. 512]) and give effect to the statute according to the usual, ordinary import of the language employed in framing it. (*Chavez* v. *Sargent,* 52 Cal.2d 162, 203 [339 P.2d 801]; *Rich* v. *State Board of Optometry, supra.*) A court may also rely on extrinsic aids such as the history of the statute, committee reports, the legislative debates, and statements to the voters on initiative and referendum measures. (*People* v. *Knowles, supra; Rich* v. *State Board of Optometry, supra,* at p. 603.)

We also observe that, where there is administrative interpretation of a statute such interpretation will be accorded great respect by the courts and will be followed if not clearly erroneous. (*Bodinson Mfg. Co.* v. *California Emp. Com.,* 17 Cal.2d 321, 325-326 [109 P.2d 935]; *Rich* v. *State Board of Optometry, supra,* at p. 604.)

Our inquiry into sundry sources reveals no extrinsic aids to interpretation excepting legislative history which shows that as originally introduced in the Legislature the statute provided for the "retirement of a prison member for industrial disability" and that as finally enacted the words "prison member" were deleted and replaced by the words "employee in the Department of Corrections having custodial duties. . . ." (Stats. 1961, ch. 905, § 3; see 38 Ops.Cal.Atty.Gen. 137, 138.) We do observe, however, that the State Employees Retirement System has interpreted the subject statute as not being applicable to the employees of the Department of Corrections whose duties are not primarily the securing of physical custody of prisoners. (See *Ralston* v. *State Employees' Retirement System, supra,* 273 Cal.App.2d 228, 229.) That interpretation has also been given by the Attorney General. (38 Ops.Cal.Atty.Gen., *supra,* at p. 137.)

Adverting to the Attorney General's opinion, we observe that it was in response to the inquiry of the Director of Corrections as to whether institutional employees, whose primary responsibility is other than custody but whose regular assignment includes inmate supervision, were employees "having custodial duties" within contemplation of section 21292.8. (At p. 137.) In concluding that such employees are not employees having custodial duties, the Attorney General stated that the fact that the subject provision was amended from "prison members" to "having custodial duties" was indicative of a legislative intent to limit coverage to those with "primarily" custodial duties (at p. 139), and that the word "primarily," in turn, concerns itself with the chief function of the job for which an employee is hired. (At p. 139.) Accordingly, the Attorney

General opined that coverage under section 21292.8 is limited to those prison employees specifically hired to perform custodial duties. (At p. 140.)

In *Ralston, supra,* it was held that a supervising parole officer had "custodial duties" within the purview of section 21292.8. (At p. 238.) There the reviewing court traced the legislative history of the subject legislation and observed that the Legislature, in providing for the additional allowance for a member who is an employee having custodial duties, did not expressly restrict the allowance to those whose duties were principally or primarily custodial as it did in the case of "patrol members." (At pp. 236-237; see § 20017.) In making this observation the appellate court stated that "If such a restriction had been intended it would seem that a provision therefor would have been made, especially in view of the restrictive provision with reference to 'patrol member.' " (At p. 237.) In reaching this conclusion the court took cognizance of the Attorney General's opinion but was unwilling to accept its interpretation of section 21292.8 insofar as it applied to employees of the Department of Corrections having custodial duties.

We perceive the interpretation made by *Ralston* to be more logical and its rationale more persuasive than that of the Attorney General.[2] The statute under consideration contains no qualification limiting coverage to those whose duties are principally or primarily custodial, but simply applies its coverage to employees who perform custodial duties. ■ We apprehend that the "custodial duties" envisioned by section 21292.8 are those actually performed by an employee and not necessarily those which are provided for in his job description and duties. This conclusion is consistent, we believe, with the rule that a statute should be construed to effectuate its purpose. (*People* v. *Superior Court,* 70 Cal.2d 123, 133 [74 Cal.Rptr. 294, 449 P.2d 230]; *Freedland* v. *Greco,* 45 Cal.2d 462, 467 [289 P.2d 463]; *Johnstone* v. *Richardson,* 103 Cal.App.2d 41, 46 [229 P.2d 9].) ■ With respect to the instant statute its purpose appears to us to be the provision of additional disability recovery to those employees whose duties placed them in a position of potential harm or injury at the hands of persons placed in their custody.

■ Here petitioner spent a substantial portion of his employment time watching the inmates under his control. He did, on occasion, subdue inmates and take them into restrictive custody. He thus performed duties custodial in nature. We, therefore, conclude that petitioner was an em-

---

[2]We observe here that although opinions of the Attorney General are entitled to great weight, they are not controlling authority. (*People* v. *Berry,* 147 Cal.App.2d 33, 37 [304 P.2d 818]; *California Grape etc. League* v. *Industrial Welfare Com.,* 268 Cal.App.2d 692, 705 [74 Cal.Rptr. 313].)

ployee of the Department of Corrections having custodial duties within the meaning of section 21292.8.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 25, 1970.