[Civ. No. 14309. Third Dist. Mar. 15, 1976.]

ANTHONY S. FRANK, Plaintiff and Respondent, v.
BOARD OF ADMINISTRATION OF THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM et al., Defendants and Appellants.

**COUNSEL**

Robert J. Sullivan, Loren McMaster and Michael D. Stump for Plaintiff and Respondent.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill, Richard Skinner and Edmund E. White, Deputy Attorneys General, for Defendants and Appellants.

**OPINION**

**PUGLIA, P. J.**—Plaintiff, Anthony S. Frank, worked as a plumber-foreman for the California Department of Corrections ("Department"). He was so employed at the California Conservation Center at Susanville from October 1, 1965, through July 23, 1971. On the latter day, he suffered a job related injury. As a result he took immediate sick leave. He was continuously on sick leave thereafter until February 7, 1972, when he applied to the defendant Board of Administration ("Board") of the Public Employees' Retirement System ("PERS") for industrial disability retirement as a law enforcement member of PERS. It is

undisputed that plaintiff's injury incapacitated him for the performance of his duties within the meaning of Government Code section 21025.[1]

The executive officer of the Board determined that plaintiff was not a law enforcement member of PERS within the meaning of section 20017.77; that he was therefore not entitled to industrial disability retirement benefits; and that he was a state miscellaneous member of PERS within the meaning of sections 20014 and 20016. As such, plaintiff was entitled only to an ordinary disability retirement allowance as provided by sections 21295 and 21296. The ordinary allowance amounted to approximately $90 per month, substantially less than the industrial disability retirement allowance (approximately $475 per month) to which plaintiff would be entitled as a law enforcement member of PERS.

Plaintiff appealed the decision of the executive officer to the Board. After hearing, the Board adopted the proposed decision of the hearing officer affirming the decision of the executive officer. Thereafter, plaintiff petitioned the superior court for writ of mandate (Code Civ. Proc., § 1094.5) seeking review of the administrative decision, naming as respondents the Board and its executive officer (hereinafter referred to collectively as "defendant"). The superior court rendered judgment for plaintiff, directing defendant to grant plaintiff industrial disability retirement benefits. Defendant appeals.

From the commencement of plaintiff's employment on October 1, 1965, through July 1, 1971, the operative date of certain statutory changes, those employees of the Department *having custodial duties* who became disabled in the course of employment (i.e., industrial disability (§ 20038)) were entitled to disability retirement regardless of age or amount of service (former § 21020.8, § 21022). In his job as a plumber-foreman, plaintiff performed "custodial duties" within the meaning of former sections 21020.8 and 21292.8 (*Noroian v. Dept. of Administration* (1970) 11 Cal.App.3d 651, 656 [89 Cal.Rptr. 889]; see also *Ralston v. State Employees' Retirement System* (1969) 273 Cal.App.2d 228 [78 Cal.Rptr. 31]). The benefits payable to plaintiff as a department employee having custodial duties upon retirement for industrial disability would be approximately $475 per month. (See § 21292, former § 21292.8.)

---

[1]All section references hereinafter are to the Government Code unless otherwise indicated.

In 1970, sections 21020.8 and 21292.8 were repealed (Stats. 1970, ch. 1600, §§ 7, 10), and with their repeal the benefits of industrial disability retirement for employees of the Department "having custodial duties" were discontinued. Contemporaneously, the Legislature added section 20017.77, denominating as law enforcement members of PERS those employees of the Department employed to perform the duties of certain job classifications specified in that section. (Stats. 1970, ch. 1600, § 2.)[2] All of the 1970 legislative changes described in this paragraph were effective July 1, 1971, 23 days before plaintiff suffered his disabling injury. At all times relevant hereto, law enforcement members of PERS qualified for identical industrial disability retirement benefits as were formerly available to employees of the Department having custodial duties. (See former §§ 21020.75, 21292.75, repealed Stats. 1972, ch. 1098, §§ 39, 60.)

In the superior court, plaintiff relied upon two theories in his attack upon the administrative decision. His primary contention was that his exclusion from industrial disability retirement benefits by operation of the legislation effective July 1, 1971, constituted an unconstitutional abridgement of a vested right. His second contention, proffered rather diffidently but nonetheless articulated, was that he was designated a law enforcement member by section 20017.77 and thus was entitled to the

---

[2]As originally enacted, effective July 1, 1971, section 20017.77 provided: "Notwithstanding the provisions of Section 20017.75, 'law enforcement member' shall also include officers and employees in (a) the Department of Corrections employed to perform the duties now performed in positions with the following class titles: Director of Corrections; Deputy Director, Department of Corrections; Deputy Director, Institutions, Camps and Program Services Division; Deputy Director, Parole and Community Services; warden; Warden—San Quentin; superintendent II and III, Department of Corrections; deputy superintendent; correctional administrator; program administrator, correctional institution; all classes of correctional program supervisor; correctional captain, correctional lieutenant, correctional sergeant; correctional officer; all classes of women's correctional supervisor; Assistant Deputy Director, Parole and Community Services; all classes of parole administrator, adult parole; all classes of parole agent, adult parole; all classes of women's parole agent; medical facility superintendent; Superintendent, California Institution for Women, and (b) the Department of the Youth Authority employed to perform the duties now performed in positions with the following class titles: Director, Department of the Youth Authority; Chief, Division of Parole and Community Services; Deputy Chief, Division of Parole and Community Services; program administrator, correctional school; assistant superintendent, correctional school; all classes of superintendent, correctional school; Youth Authority camp superintendent; assistant superintendent, Youth Authority camp; Chief, Division of Institutions; treatment team supervisor; all classes of transportation officers, Youth Authority; security officer; all classes of group supervisors; all classes of parole agent, Youth Authority; all classes of youth counselor."

Subsequent amendments to section 20017.77 have no bearing on this case (Stats. 1971, ch. 1331, § 1; Stats. 1972, ch. 1098, § 14).

same disability retirement benefits otherwise withdrawn by the repeal of sections 21020.8 and 21292.8. The superior court's findings and conclusions, apparently prepared and submitted by plaintiff, are addressed solely to the constitutional issue, neglecting entirely the narrower question of statutory interpretation. The question of statutory construction was not resurrected in the briefs of the parties on appeal. Accordingly, we are concerned solely with the constitutional question.[3]

## I.

Defendant contrasts service retirement benefits with disability benefits, conceding directly that the employee, by mere performance of substantial services for his employer, earns a vested right in service retirement benefits before the happening of the contingency which renders the pension payable. By contrast, defendant's characterization of an employee's interest in disability pension benefits is desultory. However, defendant's position appears to be that the employee acquires no contractual (vested) right to such a pension unless and until he is actually disabled; that his interest therein is in the nature of an expectancy, albeit to a reasonable pension in the event disability does occur; that the relatively tenuous nature of plaintiff's interest in a disability as contrasted to a service retirement pension permits greater latitude in effecting modifications of the former prior to the happening of the contingency which impels the payment of benefits. Defendant states that "the salient question [on appeal] must be . . . whether or not [plaintiff] had attained

---

[3]After oral argument, plaintiff directed our attention by letter to the case of *Schalk* v. *Department of Administration* (1974) 42 Cal.App.3d 624 [117 Cal.Rptr. 92]. There the court held that section 20017.77 covered employees of the Youth Authority whose assigned duties included in substantial part the duties of the job classifications specified therein. The plaintiff, a Youth Authority teacher, had sustained permanent disabling injuries when he came to the aid of a fellow teacher under attack during a riot at a Youth Authority institution. As plaintiff was required in his employment to assist in maintaining order among wards and security in the institution, it was determined that he was employed in part to perform the duties of a security officer, one of the job classifications specified in section 20017.77.

Among the job classifications of the Department of Corrections included in section 20017.77 is that of "Correctional Officer." There is substantial uncontroverted evidence in the record before us that plaintiff had daily responsibility for custody and control of from 7 to 10 prison inmates; that in preparation therefor he had received the same training and instruction as a uniformed guard; and that his duties were not appreciably different from those of a uniformed guard. Plaintiff testified that a part of his job was to "teach [the inmates] right from wrong and make [them] better men." There was no direct evidence of the duties of a correctional officer.

Given the state of the record and the briefs of the parties, we do not address in this appeal the question of the interpretation of section 20017.77 as it might apply to the facts of the present case.

that status entitling him to a disability pension at the time [July 1, 1971] the modifications complained of took place, . . ."

The term "expectancy" is descriptive of an interest of one who merely foresees that he may receive a future benefit but has no enforceable right to it. Examples include the interests of an heir apparent, a legatee under a will and a life insurance beneficiary of a living insured who retains the right to change beneficiaries. In other words, an expectancy is more akin to a gratuity than is a pension benefit which, to the contrary, is earned by the employee as a part of the consideration due him for his services. Thus, the employee ‚has a contractual right to pension benefits. A contractual right is not an expectancy but a chose in action, a form of property which the employee acquires when he enters upon performance of the employment contract. (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 844-845 [126 Cal.Rptr. 633, 544 P.2d 561].)

■ As an integral part of the agreed-upon compensation, a pension right, once vested, may not be destroyed by a public employer without impairing a contractual obligation. (*Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 853 [179 P.2d 799]; *Lyon* v. *Flournoy* (1969) 271 Cal.App.2d 774, 779 [76 Cal.Rptr. 869]; U. S. Const., art. I, § 10; Cal. Const., former art. I, § 16, repealed Nov. 5, 1974, now art. I, § 9.) Even before the happening of the contingency that makes the pension payable, the right vests when the employee performs services under a law specifying his compensation. (*Kern, supra,* 29 Cal.2d at pp. 851-852; *Lyon, supra,* 271 Cal.App.2d at p. 782; *Santin* v. *Cranston* (1967) 250 Cal.App.2d 438, 441-442 [59 Cal.Rptr. 1].)

None of the authorities cited in the foregoing paragraph is concerned with disability retirement benefits as such. Accordingly, defendant attempts to distinguish such authorities, arguing that until disability occurs, disability retirement benefits are not "earned" in the same sense that at least some service retirement benefits are earned as soon as the employee performs substantial services for the employer, the ‘earned accumulations thereafter increasing in direct relationship to the prolongation of tenure. If accepted, the distinction urged by defendant would create an exception to the general rule contrary to existing decisional precedents. In *Rustad* v. *City of Long Beach* (1953) 122 Cal.App.2d 106 [264 P.2d 955] (criticised on other grounds in *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 458 [326 P.2d 484]), the court held that the right to receive a disability pension accrues immediately upon employment by the public agency (at p. 109). To the same effect is *Cochran* v. *City of Long Beach* (1956) 139 Cal.App.2d 282, 286 [293 P.2d 839].

When plaintiff entered into service of the state, he was entitled by statute to industrial disability retirement benefits for job related disability regardless of *age or service* (see former § 21020.8, § 21022). No reason exists in plaintiff's case to apply a different rule to disability retirement benefits than to service retirement benefits. We therefore hold that the plaintiff acquired a vested contractual right to a reasonable disability retirement pension when he entered upon performance of his employment contract with the state.

## II.

Although an employee acquires a vested contractual right to a pension that "right is not rigidly fixed by the specific terms of the legislation in effect during any particular period in which he serves. The statutory language is subject to the implied qualification that the governing body may make modifications and changes in the system. The employee does not have a right to any fixed or definite benefits, but only to a substantial or reasonable pension . . . [H]e has a vested right to a pension but . . . the amount, terms and conditions of the benefits may be altered." (*Kern* v. *City of Long Beach, supra,* 29 Cal.2d at p. 855.)

Reasonable modifications of benefits may be made prior to retirement in order to maintain the flexibility necessary to adjust to changing conditions while insuring the integrity of the system. (*Id.,* at pp. 854-855.) It is for the court to determine on the facts of each case what constitutes a reasonable and therefore permissible modification. "To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages." (*Allen* v. *City of Long Beach* (1955) 45 Cal.2d 128, 131 [287 P.2d 765].) Modification of the provisions governing plaintiff's retirement, which among other things excluded him from the more generous benefits payable for industrial disability retirement, must be considered in light of the *Allen* criteria to determine whether the modification is reasonable or an unlawful impairment of a vested, contractual right.

The modifications affecting plaintiff were contained in two enactments (Stats. 1970, ch. 1600; Stats. 1971, ch. 170). Each statute by its terms became operative July 1, 1971. Considered together, the two statutes make comprehensive changes to the PERS, most of which apparently do

not affect plaintiff. Defendant contends, however, that advantages were conferred upon plaintiff by certain provisions of the 1971 statute which offset the detriment to plaintiff due to his exclusion from industrial disability retirement benefits accomplished by the 1970 statute. Specifically, defendant points to amendments to sections 20603 and 21251.13 (Stats. 1971, ch: 170, §§ 12, 42 respectively). The amendment to section 20603 reduced the rate of plaintiff's contribution to the retirement system from 8.26 percent to 7 percent of his salary. The amendment to section 21251.13 increased plaintiff's potential service retirement allowance by 20 percent.

Neither of the parties has endeavored to demonstrate the effect of these changes on the net value of plaintiff's retirement benefits. Such an undertaking, which would necessarily involve considerable speculation, is not essential since the propriety of a modification is not dependent upon the ability to strike a precise dollar balance between benefit and detriment. It is enough that a modification does not frustrate the reasonable expectations of the parties to the contract of employment (see *Lyon* v. *Flournoy, supra,* 271 Cal.App.2d at p. 782). In any event, since plaintiff retired for disability shortly after these changes went into effect, the benefits to him were essentially theoretical, the detriments, very real.

As we have heretofore noted, to qualify as reasonable and therefore lawful, a modification of pension benefits which results in disadvantage to employees must be accompanied by *comparable* new advantages (*Allen* v. *City of Long Beach, supra,* 45 Cal.2d at p. 131). Defendant argues that the benefits conferred on plaintiff by the 1970 statutory changes, discussed hereinbefore, adequately balance the diminishment of plaintiff's disability retirement rights. Plaintiff's right to a reasonable and substantial disability pension is constitutionally protected. If that right has been eviscerated, it cannot constitutionally be compensated for by new benefits which relate entirely to service retirement. Even if the monetary value of new service retirement benefits far exceeds the amount by which plaintiff's disability retirement is diminished, the gain cannot equalize the loss, for the two retirement pensions are actually different benefits. In fact, they are mutually exclusive. Thus, to be considered comparable, an advantage relied on as offsetting must relate generally to the benefit that has been diminished.

Defendant asserts, however, that the disability benefits to which a state miscellaneous member of PERS is entitled satisfy the contractual obligation to provide plaintiff a reasonable disability pension. Clearly

plaintiff did not acquire a vested right to disability benefits in a fixed sum or within an immutable mathematical range (*Kern* v. *City of Long Beach, supra,* 29 Cal.2d at p. 855) ▪ The validity of attempted changes in pension rights is dependent upon the advantages or disadvantages to the particular employee whose own vested pension rights are involved. Benefits subsequently obtained by other employees cannot be considered to offset detriments imposed on those whose pension rights have accrued. (*Abbott* v. *City of Los Angeles, supra,* 50 Cal.2d at pp. 449-453; *Abbott* v. *City of San Diego* (1958) 165 Cal.App.2d 511, 518 [332 P.2d 324].)

▪ In determining what constitutes a reasonable disability pension as to plaintiff, we must look to the facts and circumstances surrounding the employment relationship. On the commencement of that relationship, plaintiff immediately became entitled, regardless of age or service, to retire in the event of disability on an allowance equal to 50 percent of his final compensation plus an annuity purchased with his accumulated additional contributions, if any. (Former §§ 21020.8, 21292.8; § 21022.) Had plaintiff initially been employed in a position which entitled him only to an ordinary disability retirement, his benefits thereunder would be determined by a formula in which a fixed percentage of final compensation is multiplied by years of service. (§§ 21295, 21296.) Application of the two formulas to the facts of this case yields disparate allowances of $475 and $90 respectively. The first formula contemplates an allowance that provides for the possibility of self-support. The second formula does not, at least where relatively few years of service have been accumulated before retirement.

The primary purpose of modification of pension plans is to safeguard the system while carrying out its beneficent purposes. (*Wallace* v. *City of Fresno* (1954) 42 Cal.2d 180, 186 [265 P.2d 884].) Besides affording subsistence, a disability allowance promotes efficiency and economy in public service by providing a means to replace incapacitated employees "without hardship or prejudice" to them. (§ 20001.)

In view of the volatile economic history of the past few years, it can hardly be maintained that plaintiff has a vested right to a retirement allowance which would under all circumstances guarantee self-support. It is sufficient for present purposes, however, to observe that his reasonable expectations were thwarted by provision of nominal disability benefits which, even allowing for depreciation of the dollar, were obviously never intended to provide self-sufficiency. In short, plaintiff was denied a substantial part of the compensation already earned in his

employment. We hold therefore that plaintiff's vested contractual right to a reasonable disability pension was abridged by his exclusion from entitlement to industrial disability retirement benefits.

There is an additional reason supporting our decision to affirm the judgment of the trial court. It involves the remaining *Allen* criterion that modification of vested pension rights of active employees "must bear some material relation to the theory of a pension system and its successful operation, . . ." (*Allen* v. *City of Long Beach, supra,* 45 Cal.2d at p. 131.) There is no evidence that the modifications here involved bear any relationship at all to the integrity or successful operation of the pension system applicable to the plaintiff. (*Ibid.*; *Abbott* v. *City of Los Angeles, supra,* 50 Cal.2d at p. 455; *Abbott* v. *City of San Diego, supra,* 165 Cal.App.2d at p. 520; cf. *Amundsen* v. *Public Employees' Retirement System* (1973) 30 Cal.App.3d 856, 859 [106 Cal.Rptr. 759].) Moreover, defendant does not claim that any of those modifications were necessary to preserve or protect the system, nor that the system would otherwise have difficulty meeting its obligations to the affected employees. (See *Allen* v. *City of Long Beach, supra,* 45 Cal.2d at p. 133.)

The judgment is affirmed.

Janes, J., concurred.