[Civ. No. 46409. First Dist., Div. Three. Mar. 20, 1980.]

JACKIE A. CAMPBELL et al., Plaintiffs and Appellants, v.
BOARD OF ADMINISTRATION OF THE PUBLIC
EMPLOYEES' RETIREMENT SYSTEM,
Defendant and Respondent.

566

COUNSEL

Christopher D. Burdick and Carrol, Burdick & McDonough for Plaintiffs and Appellants.

George Deukmejian, Attorney General, and Richard L. Mayers, Deputy Attorney General, for Defendant and Respondent.

---

**OPINION**

**FEINBERG, J.—**

I

The facts here are undisputed. Respondent Board of Administration (Board) of the Public Employees' Retirement System (PERS) provides retirement benefits to Santa Clara County employees on a contract basis. County employees covered by PERS have been generally divided into two categories, local safety members and local miscellaneous members. The safety members are engaged in the more hazardous occupations, such as fire fighting and law enforcement. The remainder of the Santa Clara County employees fall into the miscellaneous category. The retirement benefits for the safety members are different from those of the miscellaneous category members; they may retire at an earlier age, receive higher monthly benefits upon retirement, and do not make contributions to the Social Security system. The members of the safety category also contribute a greater portion of their wages to the PERS fund. Bailiffs in the Santa Clara County court system had been classified as "miscellaneous."

Prior to 1973, appellant Campbell, a bailiff, sought retirement coverage as a "safety" member, claiming that bailiffs had been incorrectly classified as "miscellaneous" members. The Board denied his request.

In 1973, Campbell filed suit against the Board, asking for a writ of mandate directing the Board to reclassify him from the local miscellaneous category to the local safety category. Campbell was successful.

PERS then retroactively so reclassified all the bailiffs. (There were 19 other bailiffs who had been misclassified.) PERS also assessed each bailiff the difference between the safety employee wage contribution (9 percent) and the lesser miscellaneous employee wage contribution (7 percent). The amount of the assessment ranged from approximately $1,400 to $6,000 for a total in excess of $150,000.

Appellants applied to PERS for relief from the assessments. The case was tried before an administrative law judge and his proposed decision was adopted by the Board. The decision denied appellants' application for relief.

Appellants petitioned the superior court for a writ of administrative mandamus to compel the Board to reverse its decision imposing the assessment. The petition was denied. This appeal followed.

## II

The adjustment of contributions to the retirement fund due to errors is governed by section 20165 of the Government Code.[1] As relevant here, it stated as follows: "If more or less than the correct amount of contribution required of members, the state, or any contracting agency, is paid, proper adjustment shall be made in connection with subsequent payments, or such adjustments may be made by direct cash payments between the member, state, or contracting agency concerned and the board. Adjustments to correct any other errors in payments to or by the board, including adjustments of contributions, with interest, which are found to be erroneous as the result of corrections of dates of birth, may be made in the same manner. Adjustments to correct overpayment of a retirement allowance may also be made by adjusting the allowance so that the retired person or the retired person and his beneficiary, as the case may be, will receive the actuarial equivalent of the allowance to which the member is entitled. Losses or gains resulting from error in amounts within the limits set by the State Board of Control for automatic writeoff, and losses or gains in greater amounts specifically approved for writeoff by the State Board of Control, shall be debited or credited, as the case may be, to the reserve against deficiencies in interest earned in other years, losses under investments, and other contingencies.

"No adjustment shall be made because less than the correct amount of normal contributions was paid by a member if, upon application of the member made within 90 days of discovery of the error by the system, the board finds that the error was not known to the member and was not the result of erroneous information provided by him to the system or to his employer and such failure to adjust will not preclude

---

[1]All section references hereafter are to the Government Code.

action under Section 20180 correcting the date upon which the person became a member.

"The actuarial equivalent under this section shall be computed on the basis of the mortality tables and actuarial interest rate in effect under the system on December 1, 1970."[2]

It is clear that section 20165 contemplates that, generally, overpayments or underpayments of employee contributions to the retirement system shall be adjusted so that either the employee gets back the overpayment or pays up the underpayment.

However, an exception is provided to the effect that where there is an underpayment of the "normal contribution"[3] by the member, the retirement system will "swallow" the underpayment if the member makes application to the system within 90 days of discovery of the error by the system and

(1) the error was not known to the member;

(2) was not the result of erroneous information supplied by the member; and

(3) will not preclude action under section 20180, correcting the date upon which the party became a member.

Both sides agree that the only issue is the one that arises under (1) above. The facts are not disputed; the issue is a legal one.

Appellants argue that because they had been misclassified by PERS as "miscellaneous" members from the beginning, the retirement system had made an error in collecting less than the "normal contribution," i.e., 7 percent of pay instead of 9 percent. To paraphrase Gertrude Stein, an error is an error is an error.

Thus, appellants maintain, they must be forgiven the underpayment.

---

[2]Section 20165 was amended in 1979 but the amendment is not relevant here.
[3]Section 20027 defines normal contributions as follows: "'Normal contributions' means contributions made by a member at the normal rates of contribution fixed by the law or by contract amendment, but does not include additional contributions."

Respondent, on the other hand, contends that the "error" refers to a clerical or mechanical error made by the retirement system in calculating the "normal contribution" for a given person in a given classification. Here, there is no contention that there was an error in the "normal contribution" for a miscellaneous member but rather an "error" in classification. Therefore, the judgment below should be affirmed and appellants pay up.

There appears to be no case law on the question.

### Analysis

We start with the legislative history. Prior to 1970, section 20165 did not provide for forgiveness of underpayment of member contributions. In 1970, the section was amended to so provide under the circumstances specified in the second paragraph of the section. (Sen. Bill No. 344, Stats. 1970, ch. 1049.) When Senate Bill No. 344 was sent to the Governor for signature, it was accompanied by an enrolled bill report submitted by PERS analyzing the bill and recommending that the Governor sign it.

In its analysis, PERS pointed out that "Underpayment of member contribution may arise because of clerical or mechanical error in the employer or System offices or because of an erroneous birth date provided by the member at employment. Under present law these must be corrected by collection from the member. Detail as to member rates is not readily accessible to a member, particularly at the time of employment, and he frequently will be unaware of an error in his rate of contribution."

Further, PERS estimated that the loss to the retirement system would be negligible, possibly "annually up to $3,000 in member contributions."

Thus, it is clear that from the outset the Board's interpretation of the amendment of 1970 was that it would apply to minor clerical, mechanical, or other errors made by the retirement system in calculating a member's "normal contribution"—the same position it now takes. The Board's "contemporaneous construction of the...[1970 amendment] is

entitled to great weight and ought not to be overturned unless it is clearly erroneous." (*Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567, 578 [108 Cal.Rptr. 293].)

As we have noted, the 1970 amendment engrafted onto section 20165 an exception to the general proposition that if an overpayment or an underpayment of a member's contribution were made, a proper adjustment was to be made therefor. It is significant, we believe, that the first paragraph of section 20165 speaks of the overpayment or underpayment of the "correct amount of contribution," the second paragraph (the 1970 amendment) speaks of the "correct amount of *normal* contributions" (italics added), suggesting to us, as PERS contends, an inadvertent clerical or mechanical error in calculation. Such a restrictive interpretation follows the principles that "exceptions in a statute are to be strictly construed." (*City of National City* v. *Fritz* (1949) 33 Cal.2d 635, 636 [204 P.2d 7]; see also *Estate of Banerjee* (1978) 21 Cal.3d 527 [147 Cal.Rptr. 157, 580 P.2d 657].) While "pension statutes are to be liberally interpreted in favor of the applicant so as to effectuate, rather than defeat, their avowed purpose of providing *benefits* for the employee and his family" (*Cavitt* v. *City of Los Angeles* (1967) 251 Cal.App.2d 623, 626 [59 Cal.Rptr. 690], italics added; see also *Goins* v. *Board of Pension Commissioners* (1979) 96 Cal.App.3d 1005 [158 Cal.Rptr. 470]), we do not perceive that relieving appellants of their obligation to pay that which should have been paid for the greater pension rights they have acquired, is the kind of "benefit" contemplated in *Cavitt*.

Finally, appellants contend that section 20180 read together with section 20165 supports their position.

We do not agree. While there appears to be a certain circularity between the two sections, we read section 20180 to provide that if there has been any mistake made by anyone, for any reason, including mistake by law in the system, the mistake shall be corrected, nunc pro tunc, if it can be done so in accordance with section 20165; otherwise, the correction is to be made only as of the time the corrective action is actually taken. Here, the Board decided that the correction could be made, nunc pro tunc, under section 20165 and that decision is not challenged by appellants. If anything, a reading of section 20180 supports the view we embrace here. Section 20180 indicates that errors in the system arising *for any reason* should be rectified, if possible, by the adjustment procedure set forth in section 20165. Section 20180 reads the

same now as it read in 1970 *before* the 1970 amendment to section 20165 which gave rise to the case at bench was enacted.

The judgment is affirmed.[4]

White, P. J., and Takei, J.,* concurred.

---

[4]The case was tried in the court below and before the administrative law judge on the issue of the meaning of the word "error" as inserted in section 20165 by the 1970 amendment. That is the issue we have addressed. We cannot, however, forbear pointing out that the 1970 amendment speaks, as a condition precedent to forgiveness of an underpayment, of an "error [that] was not known to the member." Here, it was the "members" who asserted the misclassification to the Board. It was stipulated that appellants knew or should have known that as "local miscellaneous members," they were contributing less than they would have as "local safety members." Thus, even if the "error" here had been an "error" within the meaning of the 1970 amendment to section 20165, how could it be said that the "error" was not known to appellants?

*Assigned by the Chairperson of the Judicial Council.