[Civ. Nos. 19304, 19475. Third Dist. Jan. 29, 1981.]

ELMER RODIE, Plaintiff and Respondent, v.
BOARD OF ADMINISTRATION OF THE PUBLIC
EMPLOYEES' RETIREMENT SYSTEM, Defendant and Appellant.

COUNSEL

George Deukmejian, Attorney General, and Stephen J. Egan, Deputy Attorney General, for Defendant and Appellant.

William A. Bloyd for Plaintiff and Respondent.

OPINION

BLEASE, J.—The Board of Administration (board) of the Public Employees' Retirement System (PERS) appeals from the judgment mandating[1] it to retroactively change Elmer Rodie's retirement status from disability to service and to pay him the benefits accruing thereby. PERS contends that the court erred in ruling that Rodie's election of retirement for disability, rather than for service, was a "mistake," cor-

---

[1]The writ of mandate in favor of Rodie was issued in No. 280370 and summary judgment was granted in favor of PERS in No. 275741. The appeals from the judgments are here consolidated.

rectable nunc pro tunc under Government Code sections 20180[2] and 20181.[3] We affirm the judgment.

## FACTS

Rodie was employed by the City of Reedley as chief of police and was therefore a member of PERS. On March 20, 1973, he underwent

[2]Government Code section 20180 provides: "Whenever, during the employment of any employee by the State, the University, or any contracting agency, or during the membership of a member in this system, or during the time this system remains under any obligation to or in respect to a retired member or his beneficiary, the board finds that, because of inadvertence, oversight, mistake of fact, mistake of law, or other cause, any action required by this part to be taken or performed by an employee, his public employer, a member or beneficiary, or this system was not taken or performed at the time it should have been taken or performed, the board shall take or perform such action, or shall order it to be taken or performed by the person whose duty it was to perform it. If, in any such case, the board finds that (1) the facts and circumstances are such that by adjustments pursuant to Section 20165, payments into or from the retirement fund, and correction of the books, accounts, and records of this system, or any of them, the action can be taken or performed as of the date it should have been taken or performed, and the status, rights, and obligations of the employee or member, his public employer, and this system can be made the same that they would have been if the action had been taken or performed at the proper time, and (2) that the purposes of this part will be effectuated if the action is taken or performed as of the date it should have been taken or performed, the board shall take or perform it as of that time, or order it to be taken or performed as of that time, and shall cause the books, accounts, and records of this system to be corrected accordingly, so as to make the status, rights, and obligations of the employee or member, his public employer, and this system the same in every respect that they would be if the action had been duly taken or performed at the proper time. If the board finds that (1) the facts and circumstances are such that the action cannot be taken or performed as of the date it should have been taken or performed, or that (2) if it is so taken or performed, the status, rights, and obligations of the employee or member, his public employer, and this system cannot be made the same that they would be if the action had been taken or performed at the proper time, or that (3) the purposes of this part will not be effectuated if the action is taken or performed as of the date it should have been taken or performed, the board shall take or perform the action, or order it to be taken or performed, as of the time the action is actually taken, and the status, rights, and obligations of the employee or member, his public employer, and this system shall be those which result from the action at the time it is actually taken." (Italics added.)

[3]Government Code section 20181 provides, in pertinent part: "For the purposes of payments into or out of the retirement fund for adjustment of errors or omissions, whether pursuant to Sections 20165, 20180, or 20527, or otherwise, the period of limitation of actions otherwise applicable shall not be deemed to commence or to have commenced to run until the error or omission has been discovered, as evidenced by the filing with this system of a claim or demand against this system or by the making of a claim or order for payment by this system against a member, a contracting agency or the state, except that with respect to actions against a retired member, or beneficiary based upon erroneous payment from or to this system the period of limitation shall commence from the date of such payment."

open heart surgery. He did not return to work. His disability became permanent and stationary (Lab. Code, § 4850) and on October 19, 1973, he applied for disability retirement. (Gov. Code, § 21023, subd. (d).)

On November 20, 1973, the Reedley City Council made requisite findings that he was disabled and that his disability was "industrial." (Gov. Code, § 21023.6.) On April 15, 1974, Rodie filed an election of retirement and beneficiary designation specifying "[i]ndustrial [d]isability" retirement and providing an effective date of January 12, 1974.

Rodie also applied for federal disability benefits which were approved on June 27, 1974. His state disability retirement payments were then reduced in the amount of the federal benefits, as required by Government Code section 21293.5.

In 1977 Rodie discovered that federal benefits do not reduce the amount of service retirement benefits, resulting in higher total benefits. He sought and was denied administrative relief, leading to the administrative mandamus proceeding (Code Civ. Proc., § 1094.5) under review here.

I

■ PERS first contends that the mistake, oversight and inadvertence provisions of Government Code section 20180 do not apply so as to permit correction of Rodie's failure to timely elect a service retirement.

Government Code section 21025, as it read on the date of Rodie's retirement,[4] required the board to retire a member for disability, if incapacitated, "unless the member is qualified to be retired for service and applies therefor...within 30 days" of his retirement for disability.

---

[4]Government Code section 21025 provided, at the time of Rodie's retirement: "If the medical examination [required by section 21024] and other available information show to the satisfaction of the board, that the member is incapacitated physically or mentally for the performance of his duties in the state service and is eligible to retire for disability, the board shall forthwith retire him for disability, *unless the member is qualified to be retired for service and applies therefor prior to the effective date of his retirement for disability or within 30 days thereafter, in which event the board shall retire the member for service.*" (Italics added.) (Added by Stats. 1945, ch. 123, § 1, p. 600; amended by Stats. 1953, ch. 1186, § 24, p. 2697.)

There is no question but that Rodie was qualified to retire for service on the effective date of his retirement for disability, January 12, 1974. PERS claims that Rodie's failure to apply for service retirement within 30 days of such date constituted a binding election of disability retirement which may not be retroactively corrected pursuant to section 20180.[5]

Section 20180 authorizes the board retroactively to correct an error if "the board finds that, because of inadvertence, oversight, mistake of fact, mistake of law, or other cause, any *action required* by this part *to be taken or performed by an employee...was not taken or performed at the time it should have been taken or performed....*" (Italics added.)

PERS' position is, in essence, that section 20180 applies only to *omissions* and not to *errors* made in the performance of required actions, characterizing Rodie's mistake as falling within the latter category. It identifies three "actions required...to be taken or performed": (1) to apply for retirement; (2) to elect the type of retirement; and (3) to select between several optional payment schemes.[6] It points out that Rodie performed all of these actions and urges that his mistake, if any, was therefore not one contemplated by section 20180.

PERS draws a line of dimensionless proportions between the failure to perform any action and the performance of the wrong action, as if the performance of the wrong action does not, in this statutory context, entail the failure to perform the right action. We do not read a statute of obvious prophylactic purpose as providing remedy only for errors of the inert.

---

[5]PERS claims, following a finding by the administrative law judge but rejected by the court below, that "long standing administrative interpretation" supports its position. We reject the argument. There is no relevant administrative regulation and there was no showing by PERS that it ever considered whether section 20180 applied. The administrative law judge's finding rested upon the testimony of a PERS official that, in her seven years there, all the requests by retired members to change their elections from disability to service retirement of which she became aware (something less than 50 in number) were denied. Such conduct does not amount to an interpretation. (See Cal. Admin. Code, tit. 2, § 550 et seq.)

[6]We observe that Rodie was not, in fact, required (in a strict sense) to perform any of the acts mentioned. If he had failed to apply for retirement after the onset of his disability, his employer would have had to apply. (Gov. Code, §§ 21022; 21023, subd. (c).) As PERS has pointed out, he would have been retired for disability, in any case, unless he timely applied for service retirement. (Gov. Code, § 21025.) If he had failed to select one of the optional payment schedules, he would have been given the "unmodified" retirement allowance, providing for payments only during his lifetime.

An employee is required to "file with the board such information affecting his status as a member as the board may require." (Gov. Code, § 20163.) Unquestionably, the statute contemplates that he will furnish correct information. If he furnishes incorrect information, he has failed to perform a required action. Similarly, PERS is required to "determine...benefits for service and disability." (Gov. Code, § 20123.) If it has miscalculated, it has failed to determine benefits in accordance with its legislative mandate to afford benefits based on the employee's status and service.

Our conclusion complies with the established policy requiring a liberal interpretation of pension statutes in favor of the applicant. (See *Cavitt v. City of Los Angeles* (1967) 251 Cal.App.2d 623, 626 [59 Cal.Rptr. 690].) PERS does not suggest any reason for permitting correction of an employee's mistake in omitting to perform a required act but not permitting it where his mistake was in performing the action incorrectly.

Finally, when section 20180 is read together with section 20165, which provides for monetary "[a]djustments to correct *any...errors* in payments to or by the board," (italics added) as it was in *Campbell* v. *Board of Administration* (1980) 103 Cal.App.3d 565 [163 Cal.Rptr. 198], it becomes apparent that it was intended by the Legislature to apply generally to errors as well as complete omissions to act. In *Campbell*, the court, which had to decide whether Government Code section 20165[7] required a retroactive upward adjustment of the contributions of former miscellaneous members reclassified as local safety members, described that statute's interaction with section 20180: "[W]e read section 20180 to provide that if there has been any mistake made by anyone, for any reason, including a mistake by law in the system, the mistake shall be corrected, nunc pro tunc, if it can be done so in accordance with section 20165; otherwise, the correction is to be made only as of the time the corrective action is actually taken.... Section 20180 indicates that errors in the system arising *for any reason* should be rectified, if possible, by the adjustment procedure set forth in section 20165." (*Campbell* v. *Board of Administration, supra*, 103 Cal.App.3d at p. 571.)

---

[7]On the date of Rodie's retirement, Government Code section 20165 provided: "If more or less than the correct amount of contribution required of members, the state, or any contracting agency, is paid, proper adjustment shall be made in connection with subsequent payments, or such adjustments may be made by direct cash payments be-

Sections 20165 and 20180 explicitly refer to one another and plainly contemplate that when an adjustment is made under section 20165, the records of the member or retired member will normally be corrected under section 20180 to reflect his true status, rights and obligations. PERS' narrow reading of section 20180 would create a whimsical patchwork permitting financial redress through correction of a member's records for an omission affecting payments, but not an omission affecting retirement status even if payments were thus affected.

We interpret section 20180 as broadly available for the correction of errors or omissions made by employees, their employers, members or beneficiaries, or the system, and resulting from inadvertence, oversight, mistake of fact, mistake of law, or other cause. In light of this interpretation, we think that an employee's inadvertent or mistaken election between disability and service retirement is embraced by the statute. We can discern no reason for treating an employee's mistaken choice between two types of retirement *to which he is entitled by reason of past services* differently from any other mistake depriving him of benefits to which he is fairly entitled. Moreover, the employee is effectively *required* to choose between them, since he will in due course be retired for disability if he does not timely request service retirement. (Gov. Code, §§ 21022; 21023, subd. (c); 21025.) An employee's election of disability retirement and late recognition that he should have elected service retirement may thus be viewed as a failure to timely request service retirement.

tween the member, state or contracting agency concerned and the board. Adjustments to correct any other errors in payments to or by the board, including adjustments of contributions, with interest, which are found to be erroneous as the result of corrections of dates of birth, may be made in the same manner. Adjustments to correct overpayment of a retirement allowance may also be made by adjusting the allowance so that the retired person or the retired person and his beneficiary, as the case may be, will receive the actuarial equivalent of the allowance to which the member is entitled. Losses or gains resulting from error in amounts within the limits set by the State Board of Control for automatic writeoff, and losses or gains in greater amounts specifically approved for writeoff by the State Board of Control, shall be debited or credited, as the case may be, to the reserve against deficiencies in interest earned in other years, losses under investments, and other contingencies.

"No adjustment shall be made because less than the correct amount of normal contributions was paid by a member if, upon application of the member made within 90 days of discovery of the error by the system, the board finds that the error was not known to the member and was not the result of erroneous information provided by him to the system or to his employer and such failure to adjust will not preclude action under Section 20180 correcting the date upon which the person became a member.

"The actuarial equivalent under this section shall be computed on the basis of the mortality tables and actuarial interest rate in effect under the system on December 1, 1970."

We hold that section 20180 is available to correct an employee's election to retire for disability rather than service, where such election results from "inadvertence, oversight, mistake of fact, mistake of law, or other cause."

## II

Having concluded, as a matter of law, that an employee's mistaken election of disability retirement over service retirement to which he is also entitled may be corrected, we must now consider whether substantial evidence supports the trial court's determination that Rodie so elected because of "inadvertence, mistake of fact and mistake of law." ▆ PERS complains that the court improperly admitted evidence in addition to the administrative record, without which some of its findings lack substantial evidentiary support.

At the administrative hearing on December 22, Rodie testified on direct examination that he learned that he qualified for federal Social Security disability benefits "[o]n or about August the 25th, 1974," after he elected disability retirement. Rodie also testified, in answer to a question by the administrative law judge, that his attorney and others told him that there might be tax savings to him in electing disability retirement. The administrative law judge thereupon found: "In retrospect, it appears that Rodie would have fared better had he selected service retirement. However, there were legitimate reasons for selection of the disability retirement: there were tax advantages and Rodie had not been granted federal benefits. If federal benefits were denied, the disability retirement would have been $100.00 per month more than the service retirement benefits."

The trial court permitted Rodie at the hearing to examine a certified public accountant who testified that there were no tax advantages to be gained which would make up for the large amount of income foregone by election of disability retirement. The court also admitted a certified copy of Rodie's Social Security file, offered to show that "[t]here was never any question or indication that he wasn't going to get his Social Security Benefits once he applied."[8] The trial court subsequently found

---

[8]The court never explicitly admitted the file at the hearing, but it is clear from a reading of the entire record and the trial court's findings that it was at some point admitted. The file was actually sent to the court two days after the hearing and discussion between Rodie's attorney and the court at a subsequent hearing clearly indicates a mutual understanding that the file was in evidence.

that "[t]here was no legitimate reason for [Rodie] to have selected Disability Retirement," since he was "substantially assured of being granted Federal Social Security Benefits, and in light of that [Rodie] would have received no tax advantages by selecting Disability Retirement." The court further found that "[t]he only legitimate inference to be drawn from the evidence was that [Rodie] mistakenly selected Disability Retirement."

PERS objected to the introduction of the additional evidence at the hearing and argued forcefully that Code of Civil Procedure section 1094.5, subdivision (e), did not permit its admission.[9] The trial court, of course, implicitly rejected its argument.

## A.

At the outset, we reject PERS' contention that this is not a case requiring the exercise by the trial court of its independent judgment, so that the court could only remand the case to the administrative level for consideration of the additional evidence. At issue are Rodie's fundamental, vested pension rights. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 45-46 [112 Cal.Rptr. 805, 520 P.2d 29]; *Dickey* v. *Retirement Board* (1976) 16 Cal.3d 745, 748-749 [129 Cal.Rptr. 289, 548 P.2d 689].) It is true that his very right to a pension is not disputed, but only the type and amount of benefits. PERS asserts that his right to elect between types of retirement was extinguished upon his retirement, and characterizes his interest in service retirement benefits as a "mere expectancy." Our interpretation of Government Code section 20180 as requiring the correction of an election which resulted from inadvertence or mistake mandates a judicial determination of whether Rodie's election did, in fact, result therefrom. Such a determination must be made by a court through the exercise of its independent judgment on the evidence produced before the administrative law judge. (Cf. *Strumsky* v. *San Diego County Employees Retirement Assn., supra*, 11 Cal.3d at pp. 45-46.)

[9]Code of Civil Procedure Section 1094.5, subdivision (e), provides: "Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (f) of this section remanding the case to be reconsidered in light of such evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit such evidence at the hearing on the writ without remanding the case."

Implicit in the trial court's admission of the additional evidence proffered by Rodie was a finding that it "could not [in the exercise of reasonable diligence] have been produced." (Code Civ. Proc., § 1094.5, subd. (e).) We are not disposed to disturb the trial court's factual determination. Although there is no reason to believe that Rodie could not have contacted a tax expert or obtained the Social Security file before the administrative hearing, the "Statement of Issues" filed by PERS preparatory to the hearing clearly indicated that the disputed issue would be Rodie's "standing" to apply for service retirement after his retirement, and failed utterly to give him notice that his claim of mistake might also be in dispute. No evidence was adduced at the administrative hearing even suggesting that the fact that Rodie applied late for federal disability benefits and had not yet qualified for them was a "legitimate reason[ ]" for selecting disability retirement, or that Rodie or his attorney ever considered the possible effect of such federal benefits on his election.[10] Rodie could not have predicted that the administrative law judge would consider the fact as evidence against his claim of mistake.

Rodie did testify, in answer to a question by the administrative law judge, that he was advised that there might be tax advantages in electing disability retirement, but it was PERS which raised the issue of possible tax advantages as negating his claim of mistake. We cannot say that "reasonable diligence" would certainly have alerted Rodie to the possibility that PERS would suggest such tax advantages, which Rodie's expert later testified were minimal, were so great as to explain his election of disability retirement.

### B.

In any case, the trial court, exercising its independent judgment on the administrative record alone, would have been justified in rejecting the administrative law judge's finding, since the evidence showed only that Rodie's attorney and others *advised* him that there were tax advantages, not that there actually *were* such advantages. That he received such advice was not at all inconsistent with Rodie's claim of mistake. If the administrative finding were rejected, there was certainly

---

[10]Rodie's attorney did request information about the offset provision, but only after Rodie had already applied for disability retirement and after the date of his effective retirement. In context, the correspondence reflects questions about possible future employment and the selection of payment options under Rodie's disability retirement.

substantial evidence, in Rodie's testimony that disability retirement was "most on [his] mind" and that no one compared the benefits he would receive with each type of retirement, to support the finding of the trial court. (See *Hosford* v. *Board of Administration* (1978) 77 Cal.App.3d 854, 859 [143 Cal.Rptr. 760].)

We affirm the judgment.

Puglia, P. J., and MacFarland, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.