[Civ. No. 50359. First Dist., Div. One. Aug. 19, 1981.]

ROBERT H. BUTTON, Plaintiff and Appellant, v.
BOARD OF ADMINISTRATION OF THE PUBLIC
EMPLOYEES' RETIREMENT SYSTEM, Defendant and
Respondent.

COUNSEL

Joan M. Pfeifer, Lucinda M. Manley and John C. Schaller for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Caren C. Dorshkind, Deputy Attorney General, for Defendant and Respondent.

OPINION

CAREY, J.*—This is an appeal from a judgment denying a writ of administrative mandamus. The writ would have compelled the Board of Administration (Board) of the Public Employees' Retirement System (PERS) to change the status of appellant's retirement pension from "service" to "disability." The Board had adopted a decision of an administrative law judge that (1) since appellant was already retired, he did not meet the statutory prerequisites to apply for a disability pen-

---

*Assigned by the Chairperson of the Judicial Council.

sion;[1] and (2) even if he did meet those prerequisites, the evidence did not establish that appellant was disabled when he retired.[2]

The court, exercising its independent judgment,[3] agreed with the Board's statutory interpretation and concluded as well that the weight of the evidence supported the "no disability" finding.

From 1961 to 1973 appellant. Robert Button worked as an investigator for the Santa Clara District Attorney's office. In April 1973 he applied for and received a normal "time-in-service" retirement. At that time appellant was aware that, were he disabled, he could have applied for and would then have been eligible to receive "disability" retirement benefits. Although he felt "exhausted," appellant was not aware of any disability and he did not apply for or request further information concerning disability retirement. Appellant was not aware of nor was he told of any retirement policy that would prohibit him from changing his retirement status from "service" to "disability" once he was retired.

Following his retirement, appellant was self-employed as a private investigator. In January 1976 he suffered a mild heart attack, was diagnosed as having coronary artery disease (arteriosclerosis), and underwent a coronary bypass operation.

---

[1]Determination of issues Nos. 1, 2, 3 and 6 read: "A person ceases to be a member of the Public Employees' Retirement System upon his retirement pursuant to Government Code Section 20390.

"Government Code Section 21023 requires that one be a member of the System at the time he files his application for disability retirement.

"Respondent does not meet any of the requirements set forth in Government Code Section 21024 which specifies the only time when an application for disability retirement can be made.

"The evidence does not establish that respondent is entitled to relief under Government Code Section 20180."

[2]Determination of issues Nos. 4 and 5 read: "The evidence does not establish that respondent was physically or mentally incapacitated to perform his duties from the discontinuance of his state service to the time of his application for disability retirement. Nor does the evidence establish that respondent was physically or mentally incapacitated to perform his duties at the time he applied for and received service retirement in 1973.

"The evidence does not establish that respondent had an existing heart condition at the time of his retirement in 1973."

[3]Vested pension rights are "fundamental." (See *Rodie* v. *Board of Administration* (1981) 115 Cal.App.3d 559, 568 [171 Cal.Rptr. 433].) The superior court applied the appropriate standard.

Based on his employment with the county, appellant applied for workers' compensation. In a 1977 decision by the Workers' Compensation Appeals Board, it was found that although appellant did not become compensably disabled until 1976, his injury was cumulative and arose out of his employment with the county.

Appellant then wrote a letter to PERS asking to convert his service retirement to a disability retirement. The Board responded that he could not change his status because the application procedures, as codified in the Government Code, precluded postretirement changes.

Appellant filed a "Request for Hearing" with PERS' Board of Administration, and in reply a PERS executive officer filed a "Statement of Issues." A hearing was held before an administrative law judge (ALJ) who ruled that only a question of law as to appellant's right to apply for a status change was before him, and that he would make no determinations as to the existence of disability as that question had not been considered by the system.[4] Nevertheless, as well as upholding PERS' statutory interpretations as to appellant's right to apply (*ante*, fn. 1), the ALJ also found that the evidence did not establish the existence of disability (*ante*, fn. 2).

■ Appellant contends that the ruling that he could not apply for a change in retirement status was erroneous.

The ALJ's ruling adopted by the Board was based upon a strict reading of Government Code sections 21023, 20390 and 21024. Section 21023 in part provides: "Application to the board for retirement of a member for disability may be made by: . . . (d) The *member* or any person in his behalf." (Italics added.)

Although appellant contends that subdivision (d) of section 21023 applies to him, he is precluded by section 20390, subdivision (a), which provides: "A person ceases to be member: (a) Upon retirement." A retiree is no longer a "member" of PERS. (*Barnwell* v. *City Council of*

---

[4]The ALJ's finding of fact No. 9 stated: "At the hearing, respondent argued that because the Executive Officer has not denied respondent's application on the grounds respondent was not disabled, that the Executive Officer has conceded and admitted respondent is in fact disabled. The System argued that they have not yet considered the matter of respondent's disability and that the only question to be determined in this hearing is one of law. The Administrative Law Judge ruled that the Statement of Issues only raised a question of law and that no decision would be made on the question of disability as that question had not been considered by the System."

*Beverly Hills* (1947) 81 Cal.App.2d 189, 193 [183 P.2d 698].) Moreover, the time limitations of section 21024 reinforce this preclusion.[5]

The use of the term "he" in subdivision (d) of section 21024 does not broaden that category to include retirees. The legislative changes in 1980 (Stats. 1980, ch. 481, § 28) from "he" to "member" was a clarification of the section not supportive of appellant's contention.

The three sections read together, as well as the need for administrative and actuarial efficiency and the difficulty of making disability determinations years after the date of retirement, evidence a legislative intent that under normal circumstances retirees may not change their status.

The decisive question is whether the existence of abnormal or unusual circumstances will permit subordination of conventional interests in favor of other policy considerations.

Section 20180 provides that inadvertence or mistake constitutes a special circumstance excusing a retired member's earlier inaction.[6]

---

[5]At the time relevant to this action, section 21024 read in part: "The application shall be made only (a) while the member is in state service, or (b) while the member, who makes contributions under Section 20891.1 or for whom contributions will be made under Section 20894.5, is absent on military service, or (c) within four months after the discontinuance of the state service of the member, or while on an approved leave of absence, or (d) while he is physically or mentally incapacitated to perform his duties from the date of discontinuance of state service to the time of application or motion. On receipt of an application for disability retirement of a member, other than a local safety member, the board shall, or of its own motion it may, order a medical examination of a member who is otherwise eligible to retire for disability to determine whether he is incapacitated for the performance of duty. On receipt of such application with respect to a local safety member, the board shall request the governing body of the contracting agency employing such member to make such determination." (Stats. 1975, ch. 655, § 3.)

[6]Government Code section 20180 provides in part: "Whenever, during the employment of any employee by the State, the University, or any contracting agency, or during the membership of a member in this system, or during the time this system remains under any obligation to or in respect to a retired member or his beneficiary, the board finds that, because of inadvertence, oversight, mistake of fact, mistake of law, or other cause, any action required by this part to be taken or performed by an employee, his public employer, a member or beneficiary, or this system was not taken or performed at the time it should have been taken or performed, the board shall take or perform such action, or shall order it to be taken or performed by the person whose duty it was to perform it."

Appellant contends that if he actually was disabled when he retired, then his and respondent's belief that he was not disabled was a mistake of fact. As a result, he should now be allowed to "correct" his status. We agree.

In *Campbell v. Board of Administration* (1980) 103 Cal.App.3d 565 [163 Cal.Rptr. 198], section 20180 was applied to allow PERS to reclassify[7] certain employees retroactively and then to assess them for the differences in their respective past contributions. Section 20180 was read to indicate that "errors in the system arising *for any reason* should be rectified, if possible, by the adjustment procedure set forth in section 20165." (*Id.*, at p. 571; italics in original.)[8]

*Rodie v. Board of Administration, supra*, 115 Cal.App.3d 559, applied the *Campbell* interpretation to facts similar to the instant case. In *Rodie* the retiree knew when he retired that he was eligible for both disability and service benefits; he elected a disability retirement. The following year he applied for and was awarded federal Social Security disability benefits only to discover that his state benefits were then reduced correspondingly. Because there would be no such reduction if he were receiving service benefits, Mr. Rodie applied for a status change. The court held that "section 20180 is available to correct an employee's election to retire for disability rather than service, where such election results from 'inadvertence, oversight, mistake of fact, mistake of law, or other cause.'" (*Id.*, at p. 567.) The court stated that it could "discern no reason for treating an employee's mistaken choice between two types of retirement *to which he is entitled by reason of past services* differently from any other mistake depriving him of benefits to which he is fairly entitled." (*Id.*, at p. 566; italics in original.)

We find without merit respondent's contention that section 20180 applies only when the action was "required to be taken" in the first place, and that appellant has not established that PERS was "required" to grant him disability at the time he retired. Although PERS would not have been required to grant appellant disability until it determined that

---

[7]"Classification" refers to the type of work the employees are engaged in. (See *Campbell, supra*, at p. 567.)

[8]The Board does not argue that a change in appellant's retirement status would not be "possible" within the meaning of *Campbell*. Rather, the Board's position is that Government Code sections 21023, 20390 and 21024 exclusively determine when and by whom an application for disability retirement can be made.

his claim had merit, nonetheless it would have been required to process his application and make that determination.

Section 20180 dictates that PERS' interests in administrative and actuarial efficiency are not of overriding importance so as to allow honest mistakes to remain uncorrected. The section equally applies to postretirement changes in status.[9] Although it may be argued that *Campbell, supra,* 103 Cal.App.3d 565, applied to members as opposed to retirees and to reclassification as opposed to status changes, section 20180 expressly applies to retired members as well as active members.

As was noted in *Campbell,* "'pension statutes are to be liberally interpreted in favor of the applicant so as to effectuate, rather than defeat, their avowed purpose of providing *benefits* for the employee and his family' [citations]...." (103 Cal.App.3d at p. 571; italics in original.)

Based on the element of mistake, this court concurs with the *Rodie* holding and appellant should prevail on the section 20180 issue. The facts of the instant case present a stronger case of mistake than *Rodie.* In *Rodie,* the retiree knew that he was eligible for either disability or service status yet elected to receive lesser disability benefits; whereas appellant did not initially realize he may have been eligible to apply for disability.

Respondent also contends that appellant's mistake was one of judgment, and claims that appellant was negligent in not knowing that he was disabled. Again, the instant situation is less judgmental and suggestive of negligence than in *Rodie.* If Mr. Rodie had undertaken sufficient inquiry, he could have easily avoided his error. Here, there is no evidence that appellant's condition was amenable to diagnosis at the time of his retirement.

In light of the clear legislative intent to compensate in a certain manner those employees who are disabled at the time they retire (see § 20001), and given the express language of section 20180, it is unreasonable to attribute to the Legislature an intention to preclude an

[9]Neither the ALJ nor the superior court stated why they denied relief based on section 20180. Appellant correctly argues that there was no factual finding as to mistake which would support the denial, even though specific findings on that point were requested. We assume that section 20180 was considered inapplicable to postretirement status changes, but the ALJ's finding on the matter does not so indicate. (See *ante,* fn. 1.)

otherwise eligible employee from receiving a disability pension on the sole ground that his disabling condition was not diagnosed as such at the time of retirement.

■ Appellant also contends that since PERS' statement of issues addressed only the question of law as to his standing to apply for a status change and without challenging the existence of a disability, PERS has effectively conceded disability.

Government Code section 11507 has been construed to give PERS the opportunity of amending its statement of issues.[10] Nevertheless, the ALJ stated he was restricted to the issues framed by PERS and chose to limit the hearing accordingly. Requiring respondent in every case to mature every possible defense at the statement of issue stage could prove uneconomical, particularly where the case could be disposed of procedurally. Administrative agencies should not be burdened with the same pleading and practice requirements of trial courts and should have wide discretion to shape their proceedings to promote overall efficiency. (*Mathews* v. *Eldridge* (1975) 424 U.S. 319, 348 [47 L.Ed.2d 18, 41, 96 S.Ct. 893].)

PERS should be allowed to independently challenge a disability claim without the need to evaluate all the underlying merits of an application. We find that respondent did not abuse its right of amendment pursuant to section 11507 and did not waive the right to contest appellant's disability.

In spite of the fact that the ALJ stated at the outset of hearing that the existence of appellant's disability was not at issue, and so found in his findings of fact, his determination of issues Nos. 4 and 5 address the disability question. Although the trial court pared back these findings, it agreed that appellant was not incapacitated when he retired.

■ Due process requires that administrative hearings be full and fair. (*English* v. *City of Long Beach* (1950) 35 Cal.2d 155 [217 P.2d 22, 18 A.L.R.2d 547]; *Leeds* v. *Gray* (1952) 109 Cal.App.2d 874 [242 P.2d 48].) A hearing in which the judge decides an issue that he had expressly precluded from the hearing does not meet the requirement of fairness. Nor would it have been proper to find against appellant in

---

[10]See Bobby, *An Introduction to Practice and Procedure Under the California Administrative Procedure Act* (1964) 15 Hastings L.J. 258, 260-261, 265, footnote 35.

summary fashion merely because appellant had submitted evidence pertaining to the disability.

The hearing lacking fairness, the finding as to appellant's disability was improper.

The effect of the workers' compensation ruling and the heart trouble presumption were not properly before the lower tribunals; inasmuch as the issue of disability is to be remanded, it is not necessary to reach those matters herein.

Appellant next contends that when he retired PERS did not tell him that he could not afterward change his status, so they may not refuse him now. Estoppel does not apply as several of its elements are missing. (See 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 132, p. 5352.) In particular, appellant does not show that respondent intended that appellant rely upon their omission, or that appellant actually did rely upon the omission. Additionally, estoppel by omission is not generally recognized (*id.*, at p. 5350), and should only be considered in the most inequitable of circumstances.

Government Code section 31720.5 presently provides in part: "If a safety member . . . who has completed five years or more of service . . . under the State Employees' Retirement System . . . develops heart trouble, such heart trouble so developing or manifesting itself . . . shall be presumed to arise out of and in the course of employment. . . ."

The State Employees' Retirement System is presently known as the Public Employees' Retirement System (Gov. Code, § 20004) and section 31720.5 applies to PERS. Whether appellant was a "safety member" within the meaning of that section at the time he retired (see Gov. Code, § 31469.3) is yet to be determined. By express terms, the presumption applies only in the determination whether a heart condition arose out of employment. It does not establish whether a heart condition was disabling, nor does it establish the initial date of disability. Even if the presumption applies to appellant, it does not conclusively establish his right to a disability pension.

The judgment of the court below denying the petition for writ of mandate is reversed and the matter is remanded to determine whether

appellant was disabled when he retired and whether he is entitled to a change in his retirement status.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied September 15, 1981, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied October 14, 1981.