[Civ. No. 68059. Second Dist., Div. Five. Aug. 10, 1983.]

SIDNEY S. BARTH, Plaintiff and Appellant, v.
BOARD OF PENSION COMMISSIONERS OF THE CITY OF
LOS ANGELES, Defendant and Respondent.

**COUNSEL**

Sidney S. Barth, in pro. per., for Plaintiff and Appellant.

Ira Reiner, City Attorney, Siegfried O. Hillmer, Assistant City Attorney, Mary Jo Curwen, Beverly E. Mosley and Kristi Lousteau, Deputy City Attorneys, for Defendant and Respondent.

## OPINION

**ASHBY, J.**—Appellant Sidney Barth appeals from a judgment denying a writ of administrative mandamus. Appellant sought the writ to compel the Board of Pension Commissioners (the Board) of the City of Los Angeles (the City) to accept his application for a service-connected disability pension. At issue is (1) whether the provisions of the Charter of the City of Los Angeles (the Charter) permit appellant to apply for a disability pension although he has already requested and received a service pension; and (2) whether charter sections 376 and 376.1, barring claims not presented to the City within one year after the claim accrued, were tolled by appellant's workers' compensation proceedings.

### FACTS

Appellant, a former police officer with the rank of police commander, joined the Los Angeles Police Department in 1946. In 1966, he was hospitalized for high blood pressure. He returned to work, but continued to receive treatment for hypertension. In October 1978, he experienced severe chest pains and was again hospitalized. Shortly after that time, appellant filed an application for workers' compensation benefits against the City. A medical report prepared by a physician selected by the City indicated that appellant had neither a heart condition nor work-related hypertension.

In June of 1979, appellant decided to retire because of his deteriorating health. Based on the physician's report, he applied to the Board for a service instead of a disability pension. A service pension, effective June 30, 1979, was granted to him on July 12, 1979.

Appellant's workers' compensation proceedings were still in progress. On July 23, 1979, appellant was examined by a court-appointed physician who diagnosed work-connected hypertension and heart disease. When appellant received this report in September of 1979, he considered petitioning the Board for a change in his pension status from "service" to "disability," but decided instead to wait until all proceedings before the Workers' Compensation Appeals Board (WCAB) were concluded. In July of 1980, he was awarded benefits of $25,795 for service-connected disabilities, and on

March 17, 1981, he received the additional sum of $10,167.50 from the state's Subsequent Injuries Fund.

On May 22, 1981, appellant submitted an application for a service-connected disability pension and petitioned the Board to set aside his previous service pension. In a hearing on October 15, 1981, the Board denied his application. The trial court denied appellant's petition for a writ of mandate, and this appeal has resulted.

I

Appellant was a member of the City's pension system for police and fire personnel, the provisions of which are set forth in article XVIII (§ 190.01 et seq.) of the City's charter.[1] ■ Respondent contends that appellant, as a former system member already retired on a service pension, is precluded from ever applying for a disability retirement. Respondent's position is based on language in sections 190.11 (governing service retirements) and 190.12 (governing disability retirements) stating that no member, retired pursuant to either section, "ever shall be paid a pension" pursuant to the other.[2] We do not believe, however, that these provisions were intended to render a member's initial choice of his pension status irrevocable. As appellant correctly points out, pension laws must be "'. . . liberally interpreted in favor of the applicant so as to effectuate, rather than defeat, their avowed purpose of providing *benefits* for the employee and his family' . . . ." (*Campbell v. Board of Administration* (1980) 103 Cal.App.3d 565, 571 [163 Cal.Rptr. 198]; italics in original; *McKeag v. Board of Pension Commrs.* (1942) 21 Cal.2d 386, 390 [132 P.2d 198].) The reasonable and less restrictive interpretation is that these provisions were intended only to prohibit simultaneous or *concurrent* payments from both pension funds. This construction is in accord with the system's fiscal provisions, which require service and disability pensions to be satisfied from two separate and distinct funds, drawn from distinct sources, and which prohibit commingling of funds unless the service pension fund has been exhausted. (Art. XVIII, § 190.06; *Wesley v. Board of Pension Commissioners* (1981) 119 Cal.App.3d 471, 473-474 [174 Cal.Rptr. 75].) Where the statutory language, as here, is ambiguous, the interpretation which enables system members to receive benefits they may be entitled to must prevail. (*Campbell v. Board of Administration, supra,* 103 Cal.App.3d at p. 571.)

---

[1] All section references hereinafter are to the Los Angeles City Charter.

[2] The pertinent portion of section 190.11 reads as follows: "No Retired Member, retired pursuant to this section, ever shall be paid pension pursuant . . . to . . . Section 190.12." Similarly, section 190.12 contains the following provision: "No Retired Member, while retired pursuant to . . . this section, ever shall be paid any pension pursuant . . . to Section 190.11 . . . ." (§ 190.12, subd. (a).)

Even assuming sections 190.11 and 190.12 could be construed as precluding a change of pension status, section 190.16 makes it clear that such a change is permissible. Section 190.16, enacted subsequent to sections 190.11 and 190.12 and expressly overriding any provisions of article XVIII inconsistent with it, permits present as well as *former* system members who believe themselves eligible to file applications to be retired pursuant to either one of the two sections.[3] If, as appellant contends, the term "former System Member" as described in section 190.16, subdivision (3), includes previously retired members, the section expressly allows him to file and requires the Board to accept a timely filed application pursuant to section 190.12. We find that it does.

While section 190.02, the article's definitional section, does not define the term "former System Member," it defines a "System Member" as a member of the fire or police department whose rights are governed by article XVIII (§ 190.02, subd. (h)), and defines a retired member as "a person who is *a former System Member* whose active status as a Department Member had been terminated and who is receiving a pension pursuant to this Article." (Art. XVIII, § 190.02, subd. (i); italics added.) Retired members, therefore, are those "former System Members" who are receiving a pension.[4] Section 190.16 expressly permits both "[a]ny System member" and "[a]ny former System Member" to file applications for either service or disability pension benefits if they believe themselves eligible. (Italics added.) Thus, we find that section 190.16 was intended to benefit *all* former system members, those who have resigned or have been discharged as well as those who have retired. Respondent's construction, which would define "former System Member[s]" so as to exclude retired members, finds no support in any of the article's provisions and, once again, would defeat rather than effectuate the article's primary purpose of providing pension

---

[3]"The provisions of this section shall be controlling if there were to be any other provision contained elsewhere in this Article which is or could be construed to be contrary thereto, in conflict therewith or different therefrom. [¶] (1) *Any System Member* who shall believe that he is eligible to be retired pursuant to Section 190.11 and that he also is eligible to be retired pursuant to Section 190.12, shall have the right to file his written application to be retired pursuant to either one of said sections . . . . [¶] . . . . [¶] (3) *Any former System Member* who shall believe that he is eligible to be paid a pension pursuant to Section 190.11 or pursuant to Section 190.12, *may file his written application for the payment to him of a pension pursuant to either one of said sections* within the time prescribed for the filing thereof by any applicable provision of law and the Board, if it were to determine that the contingencies provided in this Article for the payment thereof had happened or occurred as to such former member prior to the date upon which he has ceased to be a System Member and if there is no legal bar or defense to the granting to him of such pension or to any judicial action or proceeding which could be brought by him with respect thereto, shall grant him the pension in accordance with his written application therefor." (Art. XVIII, § 190.16; italics added.)

[4]Former system members are also those whose active status has been terminated by reason of resignation or discharge. (See § 190.12, subd. (c).)

benefits to employees. In conclusion, nothing in article XVIII prohibits appellant from filing an application for change of pension status, provided he does so in a timely manner.

II

Section 190.16, subdivision (3), requires an application for pension benefits to be filed "within the time prescribed for the filing thereof by any applicable provision of law . . . ." A one-year limitations period applicable to claims against the City is set forth in charter sections 376 and 376.1.[5] The question arises whether appellant's application was filed in a timely manner.

■ Appellant first contends his claim is not one for damages or money, and hence does not fall within the provisions of sections 376 and 376.1, because he requests a disability pension of no more than 70 percent of his base salary, the same amount he is already receiving as a service pension, and moreover will have his disability pension reduced by the amount of his quite substantial workers' compensation award.[6] (*Wesley* v. *Board of Pension Commissioners, supra,* 119 Cal.App.3d at pp. 473-474.) This argument is not meritorious. While service pension benefits may never exceed 70 percent of a former member's base salary, disability pension benefits may be increased to up to 90 percent of base salary should the disabling condition worsen. (§ 190.12, subd. (a).) Thus, appellant's application may indeed entail an additional expenditure of public funds. In any case, section 376 by its terms applies not only to claims for damages or money, but also to "all other claims or demands," and it has long been settled that applications for pension benefits are governed by sections 376 and 376.1. (*Skaggs* v. *City of Los Angeles* (1954) 43 Cal.2d 497, 505 [275 P.2d 9].)[7]

---

[5]"No suit shall be brought on any claim for money or damages against the City of Los Angeles, or any officer or board of the city, until a demand for the same has been presented, as herein provided, and rejected in whole or in part. . . . Except in those cases where a shorter period of time is otherwise provided by law, all claims for damages against the city must be presented within six (6) months after the occurence [*sic*] from which the damages arose, and all other claims or demands shall be presented within six (6) months after the last item of the account or claim accrued. . . ." (Art. XXVIII, § 376.) "Notwithstanding the six-month period for the presentation of claims as provided for in Section 376, from and after January 1, 1962, the period for presenting claims as provided for in Section 376 shall be one year . . . ." (Art. XXVIII, § 376.1.)

[6]The record suggests that appellant may, however, gain tax benefits if his pension status is changed.

[7]Appellant urges his application under section 190.12 was merely an amendment to his section 190.11 application. As pointed out, however, the City's obligations pursuant to each section differ substantially, so that each application must be regarded as a separate claim. (See *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 466 [326 P.2d 484].)

Sections 376 and 376.1 require that claims or demands other than for damages be presented within one year "after the last item of the account or claim accrued." Appellant asserts that because his right to pension payment is a continuing right, he may file his application at any time and still is entitled to a change in pension status as to all payments accrued within one year prior to the time of his filing.[8] We need not determine whether this position is correct. █ Even if we adopt, for purposes of argument only, respondent's position that the one-year limitation period began to run from the date of appellant's retirement, appellant's application still was timely filed because his WCAB proceedings equitably tolled the statute.

In *Elkins* v. *Derby* (1974) 12 Cal.3d 410 [115 Cal.Rptr. 641, 525 P.2d 81, 71 A.L.R.3d 839], the Supreme Court held the one year statute of limitations applicable to personal injury actions was equitably tolled during the time the plaintiff pursued his workers' compensation remedy against the defendant. "[R]egardless of whether the exhaustion of one remedy is a prerequisite to the pursuit of another, if the defendant is not prejudiced thereby, the running of the limitations period is tolled '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.'" (*Id.*, at p. 414; see also *Anderson* v. *City of Los Angeles* (1973) 30 Cal.App.3d 219 [106 Cal.Rptr. 299] [limitations period applicable to requests for disability pensions by city employees who are members of pension systems governed by article XXXIV is tolled during employee's appeal of his discharge to the board of civil service commissioners]; *Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 683-684 [138 Cal.Rptr. 338] [statute of limitations applicable to breach of contract actions against governmental entity tolled by WCAB proceedings]; *Addison* v. *State of California* (1978) 21 Cal.3d 313 [146 Cal.Rptr. 224, 578 P.2d 941]; *Jones* v. *Tracy School Dist.* (1980) 27 Cal.3d 99, 108-109 [165 Cal.Rptr. 100, 611 P.2d 441].) Under the present circumstances, appellant's pursuit of his workers' compensation proceedings was entirely reasonable and no doubt in good faith. The issue to be finally determined before the WCAB— whether appellant's injuries arose out of and in the course of his employment—was substantially identical to the issue determining his eligibility for a disability pension—whether his disability was service connected. (*Dakins* v. *Board of Pension Comrs.* (1982) 134 Cal.App.3d 374, 386-387 [184 Cal.Rptr. 576] [WCAB's determination on issue of police officer's work-related injury is, under certain circumstances, binding on the Board in proceedings to determine the officer's eligibility for disability pension pursuant to § 190.12].) Respondent could not have been prejudiced since the City's

---

[8]Appellant's assertion is based on *Dillon* v. *Board of Pension Commrs.* (1941) 18 Cal.2d 427, 431-432 [116 P.2d 37, 136 A.L.R. 800], and *Dryden* v. *Board of Pension Commrs.* (1936) 6 Cal.2d 575, 578-582 [59 P.2d 104]. (See also *Abbott* v. *City of Los Angeles, supra,* 50 Cal.2d at pp. 464-466.)

attorney was a party to the WCAB proceedings. The primary purpose of limitations statutes—notification of claims while they are still fresh and evidence can be gathered—was accomplished. The observations of the court in *Baillargeon* v. *Department of Water & Power, supra,* 69 Cal.App.3d at page 683, are pertinent here: "[P]laintiff's injury could have been work-related or not-work-related. Until she had ascertained that pertinent fact, she could not know the extent and the type of benefits she could claim were payable by defendants." Similarly, in light of the conflicting medical reports appellant had received, appellant could not know whether his injuries entitled him to a disability pension. Thus, we hold that the one-year limitations period was tolled from June 30, 1979, the earliest date appellant could have filed his application, until appellant received his final workers' compensation award on March 17, 1981; as a result, appellant's application filed on May 22, 1981, was well within the prescribed time limit.

The judgment is reversed and the trial court is directed to enter judgment for appellant compelling respondent to accept appellant's application to determine whether he is entitled to a disability pension according to section 190.12.

Feinerman, P. J., and Hastings, J., concurred.

A petition for a rehearing was denied September 7, 1983.